UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN LAFAYETTE HAMPTON, II,<br><br>Plaintiff,<br><br>v.<br><br>P.O. CHASE BRADEN and<br>P.O. JACOB FIGGE<br><br>Defendants. | ) | Case No. 4:25-CV-1467-ZMB |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff John Hampton's Amended Complaint, Motion for Appointment of Counsel, and Motion for Alternative Dispute Resolution. Docs. 3, 6, and 13. After screening the Amended Complaint under 28 U.S.C. § 1915(e)(2), the Court dismisses this action for failure to state a claim upon which relief may be granted and, consequently, denies as moot Hampton's pending requests for appointment of counsel and ADR.

**BACKGROUND**

**I. Criminal Case and Relevant Facts**

On April 30, 2025, a grand jury charged Hampton with unlawfully possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). *United States v. Hampton*, No. 4:25-CR-232-SRC/RHH (E.D. Mo. 2025), Doc. 2. After his arrest, Hampton moved to dismiss the indictment, and his motions were referred to the Honorable Rodney H. Holmes pursuant to 28 U.S.C. § 636(b). *Id.* Judge Holmes held a three-day evidentiary hearing and issued a Report and Recommendation (R&R) concluding that Hampton's pretrial motions were meritless. *Hampton*, Doc. 180. After reviewing the record, the Honorable Stephen R. Clark issued a Memorandum and Order adopting the R&R and denying Hampton's motions. *Hampton*, Doc. 205. A jury then found Hampton guilty of the firearms offense, and his sentencing hearing is set for October. *Hampton*, Docs. 274, 296.

Likewise, here, the Court adopts the following findings of fact from the R&R. On the evening of February 19, 2025, Detective Jacob Figge and Officer Chase Braden of the St. Charles County Police Department were on patrol in West Alton, Missouri, when they observed a vehicle fail to make a complete stop at a stop sign. *Id.* at 2–3. The officers initiated a traffic stop and identified the driver as Hampton. *Id.* at 3. Both officers were wearing body cameras that were activated during the traffic stop. *Id.* After determining that Hampton's license was revoked, Figge asked Hampton to exit his vehicle. *Id.* The bodycam video confirms that neither officer drew their firearms. *Id.* Further, the video shows that Hampton consented to a search of his person. *Id.* After the officers asked about weapons, Hampton admitted he had a firearm in the vehicle and gave Figge permission to retrieve it but not to search the vehicle. *Id.* at 4. Figge performed a record check on the firearm and determined it was stolen. *Id.* Because Hampton was in possession of a stolen firearm, Figge handcuffed Hampton and advised him of his *Miranda* warnings. *Id.* The officers determined that they had probable cause to search the vehicle in light of the stolen firearm. *Id.* During the search, Braden discovered a white powdery substance, later confirmed to be methamphetamine. *Id.* When the officers confronted Hampton with the methamphetamine, he confessed to possessing psilocybin mushrooms in his pants pocket. *Id.*

Hampton advances a competing version of his interaction with Figge and Braden. He alleges that the officers pulled him over in an unmarked vehicle, while wearing tactical clothing that lacked identifying insignia. Doc. 6 at 4. Hampton also asserts that the officers attempted to open his vehicle without his permission, pointed guns at him, and engaged in intimidation tactics by threatening to take him to jail. *Id.* at 5. Similarly, he claims that the officers utilized threats to impound his vehicle if he refused to cooperate with what he perceived to be an unlawful search. *Id.*

## II. Procedural History

In September 2025, Hampton brought this civil-rights action against Figge and Braden, in both their individual and official capacities. Doc. 1 at 3–4. At the time Hampton was a pretrial detainee at the Perry County Jail in Pinckneyville, Illinois, where he remains incarcerated. Doc. 1 at 3; Doc. 6 at 2. Hampton contests his current detention and seeks dismissal of the federal indictment due to Defendants' "misconduct" and because of "copyright infringement." Doc. 6 at 6.

Alongside his Complaint, Hampton filed an Application to Proceed in District Court Without Prepaying Fees or Costs, Doc. 2, but the Court denied the Application due to his failure to provide an inmate account statement. Doc. 7. Hampton's second and third Applications were similarly deficient. Doc. 12. Finally, in January 2026, the Court granted Hampton's fourth Application after he provided an account statement and assessed an initial partial filing fee of $40.50. Doc. 16. Hampton paid the initial fee in February, and he also filed an amended complaint. Doc. 6.

## LEGAL STANDARD

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed in forma pauperis if the action "fails to state a claim on which relief may be granted." To sufficiently state a claim, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plausible claim also requires more than the "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

To determine whether a complaint states a plausible claim for relief, the Court must engage in "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted). In doing so, the Court must "accept as true the facts alleged, but not legal conclusions." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). But the Court need not assume unalleged facts. *See Stone v. Harry*, 364 F.3d 912, 914–15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for a self-represented plaintiff). Nor must it interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993). When reviewing a self-represented litigant's complaint under section 1915, the Court liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). In other words, if a court can discern "the essence of an allegation," it should interpret the complaint in a way that permits it to consider the claim within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015).

## DISCUSSION

### I. Official-Capacity Claims

The Court first considers Hampton's official-capacity claims. "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Mo. Elec. Coops. v. Missouri*, 229 F. Supp. 3d 888, 891 (E.D. Mo. 2017) (quoting *Wills v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). Local government entities are subject to suit for constitutional violations under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). But *Monell* liability attaches only where the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).

Here, the Amended Complaint establishes that both Braden and Figge were employed by St. Charles County. Doc. 6 at 1. However, Hampton does not identify any official municipal policy or failure to train or supervise. And his only possible reference to an unofficial custom is a fleeting and speculative observation that he is "sure this is a regular activity for [Defendants]." Doc. 6 at 5. But that conclusory allegation falls far short of establishing a custom, much less the other elements required for a *Monell* claim. *See Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016) (requiring "deliberate indifference to or tacit authorization of [the custom] by policymaking officials" and a related injury). Thus, Hampton fails to state an official-capacity claim against the officers.

**II. Individual-Capacity Claims**

The Court next turns to Hampton's individual-capacity claims. As the Supreme Court has recognized, "a court may dismiss a claim as factually frivolous" but "only if the facts alleged are 'clearly baseless,' a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (internal citations omitted). Thus, a case can be dismissed without a response from the defendants where "the facts alleged in the complaint are . . . unbelievable, even though there has been no evidentiary hearing to determine their truth or falsity." *Gladney v. Pendleton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002).

Hampton asserts that Figge and Braden engaged in "misconduct" and "copyright infringement" by pulling him over in an unmarked vehicle and wearing "tactical clothing" without identifying insignias. Doc. 6 at 4–6 However, the record in Hampton's criminal proceedings directly contradict these allegations. *See United States v. Hampton,* No. 4:25-CR-232-SRC (E.D. Mo. 2025) (finding officers' observation of Hampton's failure to come to a complete stop at a stop sign while leaving a gas station established probable cause to conduct a legitimate traffic stop).

Specifically, Hampton alleges that the officers engaged in misconduct by (1) attempting to open his vehicle without his permission, (2) pointing guns at him, (3) engaging in intimidation tactics by threatening to take him to jail and (4) utilizing threats to impound his vehicle if he refused to cooperate with what he perceived to be an unlawful search. Doc. 6 at 4–5. However, his allegations are factually frivolous given the contradictory bodycam video offered at the evidentiary hearing in his criminal case, as well as the findings made by Judges Clark and Holmes that the officers never drew their firearms and had probable cause to stop Hampton, had consent to search his person, and had consent to secure the gun in his vehicle. *Hampton*, Doc. 180 at 3 n.1; *see Atkins v. Missouri Clayton Cnty.*, No. 4:25-CV-118-JMB, 2025 WL 822975, at *2 (E.D. Mo. Mar. 14, 2025) (dismissing action as factually frivolous when state court record in plaintiff's pending criminal case contradicted facts alleged in plaintiff's complaint); *see also Holland v. Simmerman*, 2026 WL 2490011, at *1 –2 (8th Cir. Aug. 26, 2026) ("If a plaintiff's allegations are blatantly contradicted by video evidence, we are not required to accept them.").

**III. Release from Confinement**

Last, Hampton seeks release from confinement. Three months ago, a jury found him guilty of unlawfully possessing a firearm as a convicted felon, and he is scheduled for sentencing later this month. He cannot attack the validity of his conviction by arguing that Defendants engaged in misconduct in conducting the traffic stop. *See Fernandez v. United States*, 146 S. Ct. 1292, 1301 (2026) (reaffirming that a writ of habeas corpus is a prisoner's sole federal remedy when challenging the fact or length of his physical imprisonment and seeking immediate release from prison, and such a challenge cannot be brought under § 1983). To seek release from confinement, Hampton will need to either appeal his conviction or file a postconviction motion after sentencing.

## CONCLUSION

Accordingly, pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court **DISMISSES** this civil-rights action without prejudice. Further, the Court **DENIES** as moot Plaintiff John Hampton's [3] Motion for Appointment of Counsel and [13] Motion for Alternative Dispute Resolution. A separate Order of Dismissal will follow.

So ordered this 18th day of September 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE